| Success Academy Charter Schs., Inc. v Liberty Sq. Realty Corp. |
|:---:|
| 2024 NY Slip Op 30129(U) |
| January 10, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 654728/2018 |
| Judge: Andrea Masley |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 48

-----------------------------------------------------------------------------------X

SUCCESS ACADEMY CHARTER SCHOOLS, INC.,

Plaintiff,

- v -

LIBERTY SQUARE REALTY CORP., HENRY
WEINSTEIN, and BENJAMIN KLEIN,

Defendants.

-----------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 654728/2018 |
| **MOTION DATE** | N/A |
| **MOTION SEQ. NO.** | 010 |

**DECISION + ORDER ON
MOTION**

HON. ANDREA MASLEY:

The following e-filed documents, listed by NYSCEF document number (Motion 010) 278, 279, 280, 281, 282, 283, 284, 285, 286, 287, 288, 289, 290, 291, 292, 293, 294, 295, 296, 297, 298, 299, 301, 302, 303, 306, 307, 308, 309

were read on this motion to/for                                DISMISS                                    .

Upon the foregoing documents, it is

In motion sequence number 010, defendants Liberty Square Realty Corp. (Liberty), Henry Weinstein, and Benjamin Klein move to (i) dismiss the first and fourth causes of action of the Second Amended Verified Complaint (SAC) pursuant to CPLR 3211(a)(1) and (a)(7) and (ii) direct plaintiff Success Academy Charter Schools, Inc. (Success) to pay, *pendente lite*, interim use and occupancy.

**Background**

The following facts are taken from the SAC (NYSCEF Doc. No. [NYSCEF] 286) and are accepted as true for the purposes of the motion to dismiss. (*Davis v Boeheim*, 24 NY3d 262, 268 [2014].)

Success manages Success Academy Charter School-NYC, an entity that operates 47 public charter schools serving 20,000 students in Manhattan, Brooklyn, Queens and the Bronx. (NYSCEF 286, SAC ¶ 18.) Liberty, formed by defendant

Motion No. 010

Weinstein, defendant Klein, and nonparty German Gelb in March 1998, owns the property located at 878 Brook Avenue, Bronx, New York (Premises). (*Id.* ¶¶ 2, 20, 34.)

On May 3, 2017, Liberty and Success entered into a lease (Lease) for the Premises. (*Id.* ¶ 2.) Success leased the Premises to house one of its charter schools. (*Id.*) During Lease negotiations, Liberty, through Weinstein, represented that it had the requisite funds to fulfill its obligations under the Lease. (*Id.* ¶¶ 4,195.) However, Success alleges this was not true as Liberty did not have sufficient funds in its bank accounts and had no ability to obtain funding. (*Id.* ¶ 45.) Success paid Liberty advance rent (Advance Rent) upon execution of the Lease. (*Id.* ¶ 71.) Under the terms of the Lease, Liberty was required to apply a portion of the Advance Rent to the cost of its architectural plans and hold the remaining monies in a segregated account in trust until the Advance Rent was required to be applied to certain monthly rent payments specified in the Lease. (NYSCEF 287, Lease § 3.1 [d]; NYSCEF 286, SAC ¶ 71.) Liberty failed to maintain the remaining Advance Rent in a segregated account and spent it for its own expenses in violation of the Lease and General Obligations Law § 7-103. (NYSCEF 286, SAC ¶¶ 74, 76.)

Under the Lease, Liberty was responsible for completing specific work on the Premises. (Landlord's Work[1]). (*Id.* ¶ 59.) Liberty was required to use best efforts to deliver Vacant Possession (i.e., with no occupants or parties having any rights of use or

---

[1] "Landlord's Work "included work critical to the conversion of the building into a school that is safe and suitable for students," i.e., "Completing all exterior work; Installing windows and exterior doors; Installing a roofing system; Installing structural steel and removing walls; Extending and modifying the grand staircase; Replacing all stairwell treads; Fire proofing; Installing a life safety system, including fire detection, fire alarms, and sprinklers; Performing plumbing, HVAC, and electrical work." (NYSCEF 286, SAC ¶ 59.)

**654728/2018   SUCCESS ACADEMY CHARTER vs. LIBERTY SQUARE REALTY CORP.**          **Page 2 of 18**
**Motion No.  010**

possession) of the Premises to Success with Landlord's Work substantially completed on or before December 1, 2017. (NYSCEF 287, Lease §§ 1.2 [e], 1.3.) Success alleges that, if Liberty failed to deliver the Premises with Landlord's Work substantially completed by January 1, 2018, Success could pay fifty percent of the agreed upon rent and could elect to perform Landlord's Work and apply for reimbursement of the costs from Liberty. (NYSCEF 286, SAC ¶ 64.) The Lease further obligated Liberty to "pay all real property taxes and assessments" and not interfere with Success's right to possession and quiet enjoyment. (*Id.* ¶¶ 65, 66; NYSCEF 287, Lease §§ 4.1, 28.)

Liberty failed to substantially complete Landlord's Work by December 1, 2017. (NYSCEF 286, SAC ¶ 90.) Liberty also failed to deliver Vacant Possession of the Premises to Success Academy before December 1, 2017 or January 1, 2018, as the Premises "'was surrounded by a fence and a pad lock and a chain that [Success] did not have access to'" and "Liberty's contractors continued to work in, and have access to, the building." (*Id.* ¶¶ 93, 94.) Liberty also "failed to make tax payments due on July 1, 2018, January 1, 2019, and July 1, 2019, as required by the Lease." (*Id.* ¶ 129.) Success paid fifty percent of the rent pursuant to Section 3.4(a) of the Lease from July 2018 through December 2020. (*Id.* ¶ 153.)

On September 20, 2018, Success sought to exercise its right to complete the pending Landlord's Work under Section 3.4(b) of the Lease. (*Id.* ¶ 103.) Due to Liberty's failure to provide documentation necessary for Success to take over Landlord's Work, Success filed this action seeking a declaration that it was entitled to "take over and complete the Landlord's Work" and compelling Liberty to produce documentation

**654728/2018  SUCCESS ACADEMY CHARTER vs. LIBERTY SQUARE REALTY CORP.**               **Page 3 of 18**
**Motion No.  010**

3 of 18

such as construction documents, contracts, invoices, change orders, etc. (NYSCEF 2, Complaint ¶ 31.)

Success filed a first amended complaint (FAC) seeking a declaration that Liberty breached the Lease by failing to (i) "complete Landlord's Work;" (ii) "construct the work in a good and workmanlike manner;" (iii) "comply with the plans and specifications agreed to by the parties;" (iv) "abide by all legal requirements;" and (v) pay real estate taxes and that Liberty's breaches entitled Success to terminate the Lease. (NYSCEF 282, FAC ¶¶ 111-114.)

Liberty moved pursuant to CPLR 3212 and 3211(a)(7) to dismiss the FAC. (NYSCEF 109, Notice of Motion [mot. seq. no. 006].) The court granted Liberty's motion to dismiss[2], in part, "to the extent that the lease prohibits plaintiff from terminating the lease because of landlord's failure to complete landlord's work." (October 5, 2021 Decision). (NYSCEF 214, Decision and Order [mot. seq. nos. 004, 006].) Following that decision, Success filed the SAC on consent of the parties. (NYSCEF 270, Stipulation and Order.) Success (i) added Weinstein and Klein as defendants, (ii) added a claim against defendants for violation of General Obligations Law § 7-103, based on the commingling of the Advance Rent with other funds; (iii) added a breach of fiduciary duty claim against defendants based on the commingling and spending of the Advanced Rent, (iv) revised its declaratory judgment claim

---

[2] In motion sequence number 006, Liberty moved pursuant to both CPLR 3211(a)(7) and 3212 to dismiss the FAC. Since there had been no discovery when the motion was heard, this courts analyzed the motion under the standard of CPLR 3211 and issued its decision pursuant to that standard. (NYSCEF 245, tr at 31:16-22 [mot. seq. nos. 004, 006].)

**654728/2018 SUCCESS ACADEMY CHARTER vs. LIBERTY SQUARE REALTY CORP.** **Page 4 of 18**
**Motion No. 010**

regarding defendants' breach of contract; and (v) added a claim for fraudulent inducement against defendants. (NYSCEF 286, SAC ¶¶ 155-202.)

**Discussion**

Legal Standard

On a motion to dismiss pursuant to CPLR 3211(a)(7), the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." (*Leon v Martinez*, 84 NY2d 83, 87-88[1994] [citation omitted].)

To prevail on a CPLR 3211(a)(1) motion to dismiss, the movant has the "burden of showing that the relied-upon documentary evidence resolves all factual issues as a matter of law, and conclusively disposes of the plaintiff's claim." (*Fortis Fin. Servs. v Fimat Futures USA*, 290 AD2d 383, 383 [1st Dept 2002] [internal quotation marks and citation omitted].) "A cause of action may be dismissed under CPLR 3211 (a)(1) only where the documentary evidence utterly refutes [the] plaintiff's factual allegations, conclusively establishing a defense as a matter of law." (*Art and Fashion Group Corp. v Cyclops Prod., Inc.*, 120 AD3d 436, 438 [1st Dept 2014] [internal quotation marks and citation omitted].) For evidence to be considered documentary, it must be unambiguous and of undisputed authenticity. (*Fontanetta v John Doe 1*, 73 AD3d 78, 86 [2nd Dept 2010].) Affidavits and deposition testimony do not constitute "the type of documentary evidence that may be considered on a motion pursuant to CPLR 3211 (a) (1)." (*Correa v Orient-Express Hotels, Inc.*, 84 AD3d 651, 651 [1st Dept 2011] [citations omitted].)

654728/2018   SUCCESS ACADEMY CHARTER vs. LIBERTY SQUARE REALTY CORP.                 Page 5 of 18
Motion No.  010

5 of 18

Declaratory Judgment Claim

Success seeks a declaration that (i) Liberty breached and is in default under the Lease due to its failure to use its best efforts to complete Landlord's Work; its failure to perform Landlord's Work in a good and workmanlike manner, its failure to comply with the plans and specifications agreed to by the parties, and its failure to abide by all legal requirements, including the New York City Building Code; its failure to pay real estate taxes and assessments; its failure to deliver Vacant Possession of the Premises; and its failure to comply with its obligation not to disturb the right to possession and quiet enjoyment of the Premises; and (ii) that Success is entitled to terminate the Lease due to these defaults.  (NYSCEF 286, SAC ¶¶ 174-175.)

*Landlord's Work*

Defendants argue that this portion of Success's claim is foreclosed by the October 5, 2021 Decision, where the court held that the Lease prohibits Success from terminating for a failure to complete the Landlord's Work.  Success contends that the court's ruling was confined to the issue of whether, under the terms of the Lease, Success could terminate the Lease because of Liberty's failure to complete the Landlord's Work.  Thus, Success asserts that it clarified and elaborated on other defaults such as Liberty's failure to engage in best efforts to substantially complete the Landlord's Work and failure to perform the Landlord's Work in a good and workmanlike manner in compliance with legal requirements and the plans set forth in the Lease.

In its October 5, 2021 Decision, the court determined that Liberty's failure to complete the Landlord's Work is not a ground for Success to terminate the Lease and granted Liberty's motion to dismiss in part.  (NYSCEF 214, Decision and Order [mot.

**654728/2018   SUCCESS ACADEMY CHARTER vs. LIBERTY SQUARE REALTY CORP.**                    **Page 6 of 18**
**Motion No.  010**

6 of 18

seq. no. 006].)  The court relied on Section 3.4(c) of the Lease, which provides that, "[i]n the event that Landlord is not able to deliver to Tenant on or before January 1, 2018 Vacant Possession of the Premises, whether or not Landlord's Work is substantially completed, then in addition to its other remedies under this Lease, at any time prior to the Commencement Date Tenant may elect to terminate this Lease ... ."  (NYSCEF 287, Lease at 9.)  This provision clearly excludes "substantially completed Landlord's Work" as a ground for termination of the Lease because, if Liberty delivered Vacant Possession of the Premises by January 1, 2018, and the Landlord's Work was not complete, Success could not seek to terminate the Lease for a failure to complete the Landlord's Work.

However, the court did not rule out the possibility that the Lease could be terminated for other contractual breaches by Liberty.  (NYSCEF 245, tr at 27:23-28:20 [mot. seq. no. 006].)  In fact, the court found that, while Section 3.4(c), excludes the completion of the Landlord's Work as a ground to terminate the Lease, Section 3.7(b) provides that the Lease can be terminated for Liberty's default in their other obligations under the Lease.  (*Id.*)  Thus, the court's prior decision does not foreclose these claims supporting Success's cause of action for a declaratory judgment.

Pursuant to Section 1.3, Liberty "shall use best efforts to deliver Vacant Possession of the Premises to [Success] with Landlord's Work substantially completed ... ."  (NYSCEF 287, Lease at 5.)  Pursuant to Section 37.1, Liberty is responsible for "for constructing in a good and workmanlike manner the Landlord's Work ... and in accordance with all Legal Requirements."  (*Id.* at 46.)  A failure to adhere to these provisions would constitute a breach.  Although Section 31.1 provides that the Lease is

**654728/2018   SUCCESS ACADEMY CHARTER vs. LIBERTY SQUARE REALTY CORP.**          **Page 7 of 18**
**Motion No.  010**

7 of 18

a net lease, which does not give Success a right to terminate, Section 31.1 contains an exclusion– "except as otherwise specifically provided herein." (*Id.* at 42.) Therefore, if Liberty failed to meet its obligations to use best efforts to deliver the Premises substantially complete, to construct the Landlord's Work in a good and workmanlike manner, and to abide by all plans and legal requirements, it breached the Lease. Liberty's conclusory sentence that best efforts, good and workmanlike manner, and legal requirements are not independent obligations but rather subsumed in the completion of the Landlord's Work does not persuade the court otherwise.

Completion of work is independent of using quality and adherence to plans and laws. Further, in New York, "a 'best efforts' clause imposes an obligation to act with good faith in light of one's own capabilities.'" (*Ashokan Water Servs., Inc. v New Start, LLC*, 11 Misc 3d 686, 692 [Civ Ct, Kings County 2006], quoting *Bloor v Falstaff Brewing Corp.*, 601 F2d 609, 613 [2d Cir 1979].) Not acting in good faith in attempting to complete work is also independent from actual completion.

When deciding the motion to dismiss the FAC, on the record, the court stated that there was a "conflict" in so far as Section 31.1 states that Success could not terminate the Lease and Section 3.7(b) states that the Lease can be terminated for Liberty's default in their other obligations under the Lease. The court corrects its use of the word "conflict." Section 31.1, the "Non-Terminability" provision, clearly provides an exception as discussed above and Section 3.7(b) clearly provides that the Lease can be terminated if Liberty defaults in its obligations. This does not present a conflict; it presents an issue whether Success's allegations of Liberty's failures were actual obligations under the Lease, falling within the exception of Section 31.1. After careful

**654728/2018   SUCCESS ACADEMY CHARTER vs. LIBERTY SQUARE REALTY CORP.**          **Page 8 of 18**
**Motion No.  010**

8 of 18

[* 8]

review of the SAC and Lease, the court answers this in the affirmative. [3] This does not alter the court's determination that Section 3.4(c) specifically excludes the completion of the Landlord's Work as a ground to terminate the Lease as it clearly does.

*Failure to Timely Pay Real Estate Taxes*

The court denied dismissal of this portion of the declaratory judgment claim on the motion to dismiss the FAC. The supporting allegations remain the same in the SAC. Thus, as this is not a motion to renew or reargue, the court declines the invitation to relitigate this issue.

*Disturbance of Success Academy's Quiet Enjoyment*

Section 28.1 provides that "[s]o long as [Success] pays the Rental and performs all of its obligations under this Lease, [Success]'s possession of the Premises will not be disturbed by [Liberty], its successors and assigns, or anyone acting by or on behalf of any of the foregoing." (NYSCEF 287, Lease at 40.)

Liberty argues that its alleged interference with Success's quiet use and enjoyment of the Premises, based on the allegation that Liberty allowed movie shoots to occur within the Premises which interfered with Success Academy's possession of the Premises[4] (*see* NYSCEF 286, SAC ¶¶ 133-134), cannot be a ground for termination of the lease. Liberty directs the court's attention to the following portion of Section 31.1, "nor shall the respective obligations of Landlord and Tenant be otherwise affected by …

---

[3] On this 3211 motion, the court is not making a determination as to whether the Lease was, in fact, breached or considering any defenses Liberty may have.

[4] Success also alleges that the movie shoots prevented delivery of Vacant Possession. (*See* NYSCEF 286, SAC ¶¶ 97-99.)

**654728/2018   SUCCESS ACADEMY CHARTER vs. LIBERTY SQUARE REALTY CORP.**          **Page 9 of 18**
**Motion No.  010**

the lawful or unlawful prohibition of Tenant's use of the Premises, the interference with such use by any persons, corporations or other entities." (NYSCEF 287, Lease at 42.)

Section 31.1 lists certain occurrences that shall not affect the parties' obligations:

"reason of damage to or destruction of the Premises from whatever cause, any taking by condemnation, eminent domain or by agreement between Landlord and those authorized to exercise such rights, the lawful or unlawful prohibition of Tenant's use of the Premises, the interference with such use by any persons, corporations or other entities, or by reason of Tenant's acquisition of ownership of the Premises otherwise than pursuant to an express provision of this Lease, or by reason of any default or breach of any warranty by Landlord under this Lease or any other agreement between Landlord and Tenant, or to which Landlord and Tenant are parties, or for any other cause whether similar or dissimilar to the foregoing, any present or future law to the contrary notwithstanding."

(NYSCEF 287, Lease at 42.) The court does not agree that this language prevents Success from terminating the Lease based on a default by Liberty of its obligation under the Lease to not interfere with Success's quiet enjoyment of the Premises. Again, not disturbing Success's quiet enjoyment is one of Liberty's obligations assuming the conditions placed on Success are satisfied. (*Id.* § 28.) A failure to comply with this obligation would be a default warranting termination of the Lease.

*Failure to Deliver Vacant Possession.*

It is undisputed that Success could terminate the Lease if Liberty failed to deliver Vacant Possession of the Premises on or before January 1, 2018. (NYSCEF 293, Defendants' Memo of Law at 15; NYSCEF 297, Plaintiff's Memo of Law at 5; NYSCEF 287, Lease § 3.4 [c].) However, the parties dispute whether Vacant Possession was in fact delivered on or before January 1, 2018. Vacant Possession is defined in Section 1.2 (e) as "no occupants or parties having any rights of use or possession" of the Premises.

**654728/2018   SUCCESS ACADEMY CHARTER vs. LIBERTY SQUARE REALTY CORP.**            **Page 10 of 18**
**Motion No.  010**

10 of 18

Success alleges that there was no delivery of Vacant Possession within the prescribed deadline as the Premises remained under lock and key, Liberty's contractors continued to work in and have access to the Premises, and Liberty even rented out the building for movie shoots. (NYSCEF 286, SAC ¶¶ 94, 96-99.) It cannot be determined on this motion to dismiss whether, in fact, Vacant Possession was delivered.

Defendants claim that Section 37.4 of the Lease allows both Liberty and Success to have joint access to the Premises prior to the completion of Landlord's Work, and therefore, the presence of Liberty's contractors on the Premises had no bearing on the delivery of Vacant Possession. Section 34.7 provides that

> "[p]rior to the Delivery Date, Landlord shall notify Tenant when Tenant and Tenant's contractors may have joint access to the Premises with Landlord for the purpose of accomplishing Tenant's Work, if (i) such joint access will not cause unreasonable interference with the work of Landlord's contractor, (ii) there are no delays created thereby in the construction process, (iii) an acceptable schedule of work is agreed upon between Landlord's contractor and Tenant's contractors and (iv) Tenant assumes all liability for furniture and other permitted installations left in the Premises and for any work performed in the Premises by Tenant or its contractors. Access to the Premises by Tenant in accordance with the foregoing and solely for such purposes shall not be deemed to advance the Commencement Date."

(NYSCEF 287, Lease at 47.) This provision is in regard to accomplishing Tenant's Work, not Landlord's Work, and situations where Success's contractors may have joint access. The court does not see how this provision precludes Success's claim from surviving this motion to dismiss.

Fraudulent Inducement

Success alleges that defendants fraudulently induced it into executing the Lease by misrepresenting that it had the financial capacity to do Landlord's Work when it only had several hundred dollars in its bank accounts as opposed to the $17.5 million

**654728/2018   SUCCESS ACADEMY CHARTER vs. LIBERTY SQUARE REALTY CORP.**                    **Page 11 of 18**
**Motion No. 010**

11 of 18

[* 11]

required to undertake Landlord's Work. (NYSCEF 286, SAC ¶¶ 194-196, 199.)

Success claims that it reasonably relied on these misrepresentations to its own

detriment and suffered over $8 million in losses. (*Id.* ¶¶ 200-201.)

*Disclaimer and Merger Clause in the Lease*

Defendants assert that this claim is barred by the Lease's disclaimer and merger

clauses. (*See* NYSCEF 287, Lease §§ 2.1, 30.1.) However, defendants' reliance on

Section 2.1 is misplaced. Section 2.1, entitled 'Title', provides that

> "Title to the Premises and the appurtenances thereto, as well as all improvements, alterations, changes and additions thereto when made, erected, constructed, installed or placed upon, below or above the Premises shall be and remain in Landlord. Notwithstanding anything to the contrary contained in this Lease, the rights to all images of the Building, other than those created by or on behalf of Tenant in accordance with the subsequent sentence, including but not limited to images in moving, still, virtual, digital, and other media formats, are not demised hereunder and are the property of and are retained by Landlord. Tenant may create and use images of the Building for marketing and similar purposes related to its operation of a school. Tenant represents to Landlord that Tenant has examined the title to and physical condition of the Premises prior to the execution and delivery of this Lease and has found the same to be satisfactory for all purposes hereof, subject to the performance of Landlord's Work and any representations and warranties expressly made by Landlord in this Lease and provided that same shall not limit Landlord's obligations expressly set forth in this Lease, including repair, maintenance and replacement obligations and obligations to cause compliance with legal requirements. **Landlord has made no representations express or implied, in fact or by law, except to the extent expressly set forth in this Lease.** With respect to the Premises or title or use thereof and Tenant accepts the same "as is", except for the completion of Landlord's Work and any representations and warranties expressly made by Landlord under this Lease and provided that same shall not limit Landlord's obligations expressly set forth in this Lease, including repair, maintenance and replacement obligations and obligations to cause compliance with legal requirements. Landlord shall not be liable for any latent or patent defect in or about the Premises or the Building except for any representations or warranties expressly made by Landlord under this Lease and provided that same shall not limit Landlord's obligations expressly set forth in this Lease, including repair, maintenance and replacement obligations and obligations to cause compliance with

**654728/2018   SUCCESS ACADEMY CHARTER vs. LIBERTY SQUARE REALTY CORP.**                    **Page 12 of 18**
**Motion No.  010**

legal requirements. All furniture, trade fixtures and moveable equipment brought onto the Premises by or on behalf of Tenant shall be and remain Tenant's property throughout the Term."

(NYSCEF 287, Lease at 6 [emphasis added].)

The disclaimer language in Section 2.1 must be read in its full context; it plainly relates only to representations made about the title and physical condition of the Premises and therefore, would not include representations pertaining to Liberty's financial condition within its ambit. Nevertheless, a "disclaimer will defeat any allegation that the contract was executed in reliance upon contrary oral representations" when the disclaimer is specific. (*DiBuono v Abbey, LLC*, 95 AD3d 1062, 1064 [2d Dept 2012] [citations omitted].) If the court accepts Liberty's argument that this disclaimer applies also to representations regarding Liberty's finances, this disclaimer would not defeat those allegations as it is not specific as to those allegations. (*Id*.) Further, even if found specific, the disclaimer "does not provide a ground for dismissing the fraudulent inducement claim" because Success cannot be precluded from claiming reliance on "facts peculiarly within defendants' knowledge." (*Ohm NYC LLC v Times Sq. Assoc. LLC*, 170 AD3d 534, 535 [1st Dept 2019] [citations omitted].) The state of Liberty's finances are facts peculiarly within defendants' knowledge.

Defendants' reliance on Section 30.1 is also unavailing. The merger clause in Section 30.1 provides that "[t]his Lease contains the entire agreement between the parties hereto and shall not be modified in any manner except by a writing signed by Landlord, Tenant and Mortgagees if required by Mortgagees." (NYSCEF 287, Lease at 41.) "Where a merger clause is 'general and vague,' i.e., merely 'an omnibus statement that the written instrument embodies the whole agreement, or that no representations

**654728/2018 SUCCESS ACADEMY CHARTER vs. LIBERTY SQUARE REALTY CORP.** Page 13 of 18
**Motion No. 010**

13 of 18

have been made,' the merger does not preclude parole evidence establishing fraudulent inducement to enter into the contract. (*Laduzinski v Alvarez & Marsal Taxand LLC*, 132 AD3d 164, 169 [1st Dept 2015] [citation omitted].) The "boilerplate language" of this merger clause "is too general to bar plaintiff's claim since it 'makes no reference to the particular misrepresentations allegedly made here by [defendants].'" (*Id.* [citation omitted].)

*Justifiable Reliance*

"To state a claim for fraudulent inducement, there must be a knowing misrepresentation of material present fact, which is intended to deceive another party and induce that party to act on it, resulting in injury." (*GoSmile, Inc. v Levine*, 81 AD3d 77, 81 [1st Dept 2010] [citation omitted].) "To be viable, a fraudulent inducement claim must demonstrate justifiable reliance on the false representation." (*Fed.-Mogul Corp. v UTi, United States, Inc.*, 146 AD3d 468, 471 [1st Dept 2017] [citation omitted].) The question of what constitutes reasonable or justifiable reliance is not generally a question to be resolved as a matter of law on a motion to dismiss. (*ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*, 25 NY3d 1043, 1045 [2015] [citation omitted].) However, if a sophisticated party failed to make use of the means of verification available to it to verify the alleged misrepresentations, it cannot as a matter of law establish that it entered an arm's length transaction in justifiable reliance on these alleged misrepresentations. (*Tourneau, LLC v. 53rd & Madison Tower Dev. LLC*, 896 NYS2d 631, 637 [2010].) In the absence of any allegations that a party attempted to verify the representations by which it was allegedly misled during the negotiation of the contract, the claim for fraudulent inducement fails to adequately allege justifiable reliance as a matter of law.

**654728/2018   SUCCESS ACADEMY CHARTER vs. LIBERTY SQUARE REALTY CORP.**
**Motion No.  010**                                                    **Page 14 of 18**

14 of 18

(*Id.*) Further, if the facts represented are not peculiarly within the plaintiff's knowledge, "and the [plaintiff] has the means available to [it] of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, [the plaintiff] must make use of those means, or [it] will not be heard to complain that [it] was induced to enter into the transaction by misrepresentations" (*ACA Fin. Guar. Corp.,* 25 NY3d at 1044 [internal quotation marks and citations omitted].)

*Tourneau* squarely applies to this case. Success is a sophisticated entity and had the means to verify the representations by which it was allegedly misled during the negotiation of the Lease. Nowhere in the SAC does Success allege that it made any effort, either by accessing publicly available documents or requesting Liberty to disclose its financials, tax returns, bank statements, or other financial documentation to verify Weinstein's statements about Liberty's financial condition. In the absence these allegations, Success's claim for fraudulent inducement fails to adequately allege justifiable reliance as a matter of law and is dismissed.

Individual Defendants

Defendants assert that Section 32 of the Lease bars the fraudulent inducement claim against defendants Weinstein and Klein. However, this claim is dismissed in its entirety on other grounds. Defendants also argue that Success has not sufficiently pled a piercing the corporate veil theory that would extend liability to the individual defendants for Liberty's alleged breaches of its obligations under the Lease.

"[P]iercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2)

**654728/2018   SUCCESS ACADEMY CHARTER vs. LIBERTY SQUARE REALTY CORP.**          **Page 15 of 18**
**Motion No.  010**

15 of 18

that such domination was used to commit a fraud or wrong against the plaintiff." (*Morris v State Dept. of Taxation & Fin.*, 82 NY2d 135, 141 [1993] [citations omitted].)

> "While complete domination of the corporation is the key to piercing the corporate veil, especially when the owners use the corporation as a mere device to further their personal rather than the corporate business, such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward plaintiff is required. The party seeking to pierce the corporate veil must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene."

(*Id.* at 141-142 [citations omitted].) Allegations shall not be "conclusory and unaccompanied by allegations of consequent wrongs." (*UMG Recs., Inc. v FUBU Records, LLC*, 34 AD3d 293, 294 [1st Dept 2006] [citations omitted].)

Here, Success alleges that Weinstein and Klein "use Liberty for their personal benefit," that Liberty does not have corporate governing documents, including shareholder or operating agreements and by-laws, and Weinstein and Klein "have made payments to themselves and their other wholly-owned corporations from Liberty's bank account." (NYSCEF 286, SAC ¶¶ 22-25, 26-27, 142-148.) These conclusory allegations are not enough to meet the heavy burden placed on Success. The declaratory judgment claim is dismissed against Weinstein and Klein.

Pendente Lite Rent

Defendants claim that Success should be directed to comply with its obligation to pay rent under the Lease since Success has occupancy rights to the Premises and the Lease has not expired. Success asserts that it paid fifty percent of the applicable rent pursuant to Section 3.4(a) of the Lease from July 2018 through December 2020 and only ceased rent payments when it discovered Liberty's misappropriation of the

**654728/2018  SUCCESS ACADEMY CHARTER vs. LIBERTY SQUARE REALTY CORP.**              **Page 16 of 18**
**Motion No.  010**

16 of 18

Advance Rent.  Success further claims that it would be inequitable for it to have to pay rent and occupancy fees when it does not have possession of and is unable to use the Premises.

The court has broad discretion to direct a tenant to pay use and occupancy, *pendente lite.*  (*Alphonse Hotel Corp. v76 Corp.*, 273 AD2d 124, 124 [1st Dept 2000].)

> "The award of use and occupancy during the pendency of an action or proceeding accommodates the competing interests of the parties in affording necessary and fair protection to both and preserves the status quo until a final judgment is rendered.  It is manifestly unfair that [a tenant] should be permitted to remain in possession of the subject premises without paying for their use."

(*MMB Assoc. v Dayan*, 169 AD2d 422, 422 [1st Dept 1991] [internal quotation marks and citations omitted].)

It is a disputed issue of fact whether Liberty delivered Vacant Possession of the Premises.  Further, there is no indication that Success is currently occupying or using the Premises.  Therefore, it would be inequitable to direct Success to pay rent or use and occupancy fees, *pendente lite,* particularly when Success alleges that Liberty commingled its Advance Rent in violation of the provisions of the Lease and General Obligations Law § 7-103.  Thus, defendants' motion seeking rent or use and occupancy fees, *pendente lite,* is denied.

The court has considered the parties' remaining arguments and finds them unavailing, without merit or otherwise not requiring an alternate result.

ORDERED that the defendants' motion to dismiss the first and fourth causes of action in the Second Amended Complaint and seeking an order directing the plaintiff to pay use and occupancy, *pendente lite*, is granted, in part, to the extent that the fourth cause of action (fraudulent inducement) is dismissed in its entirety and first cause of

**654728/2018   SUCCESS ACADEMY CHARTER vs. LIBERTY SQUARE REALTY CORP.**
**Motion No.  010**

**Page 17 of 18**

17 of 18

action (declaratory judgment) is dismissed against Weinstein and Klein and otherwise denied; and it is further

ORDERED that defendants are directed to serve an answer to the Second Amended Complaint within 20 days after service of a copy of this order with notice of entry; and it is further

ORDERED that the parties are to submit a status update to this court (SFC-Part48@nycourts.gov) on February 15, 2024.

| 1/10/2024 | | | | | | |
|-----------|---|---|---|---|---|---|
| **DATE** | | | | | ANDREA MASLEY, J.S.C. | |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|------------|---|---------------|---|---|----------------------|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

**654728/2018   SUCCESS ACADEMY CHARTER vs. LIBERTY SQUARE REALTY CORP.**          Page 18 of 18
**Motion No.  010**

18 of 18